```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DERRICK GAY                    :   CIVIL ACTION
                               :
        v.                     :
                               :
HARRY WILSON, et al.           :   NO. 07-1119
```

                                ORDER

        AND NOW, this 24nd day of September, 2007, upon careful and independent consideration of Derrick Gay's petition for writ of habeas corpus (docket entry #1), the Commonwealth's answer to application for habeas corpus relief (docket entry #14), the Report and Recommendation of the Honorable Charles B. Smith (docket entry #15), Gay's <u>pro se</u> Objections to the Report and Recommendation (docket entry #18), and the Court finding:

        (a)  Derrick Gay seeks habeas relief from his convictions for third degree murder, aggravated assault, recklessly endangering another person, possessing an instrument of crime, and possession of a prohibited offensive weapon;

        (b)  Gay was convicted of these crimes for shooting and killing Jamar Beauford outside of a bar in Chester, Pennsylvania on February 4, 1995;

        (c)  Gay was convicted after a bench trial before the Honorable Charles C. Keeler in the Delaware County Court of Common Pleas;

        (d)  Gay asserts seven different bases for habeas relief: (1) he was convicted through the knowing use of perjured testimony; (2) key witness testimony was in direct conflict with incontrovertible physical facts; (3) the prosecution's eye witness was incompetent to testify; (4) the evidence presented

was legally insufficient to convict beyond a reasonable doubt; (5) he suffered from ineffective assistance of trial counsel; (6) his Pennsylvania Post-Conviction Relief Act ("PCRA") counsel was ineffective; and (7) the PCRA court erred by adopting PCRA counsel's no merit letter rather than conducting an independent review of the record;

    (e)  We will consider each basis for relief in turn, starting with the claim that the Commonwealth convicted Gay using perjured testimony;

    (f)  Gay argues that at his trial the prosecutor suborned perjury because the eye witness, Gregory Barksdale, gave wilfully false testimony about his alcohol consumption on the night of the shooting, the prosecutor knew the testimony was false, and he did not seek to correct it;

    (g)  Barksdale, when asked at trial about his alcohol consumption, denied drinking alcohol while in the bar prior to the shooting, April 14, 2004 Tr. p. 22, 43, thereby contradicting his testimony at the preliminary hearing, October 8, 2003 Tr. p. 6, 8, 13, 16, and his statements to the police immediately following the shooting, Barksdale's February 4, 1995 Police Statement at 1-2 [hereinafter "Statement"];

    (h)  Barksdale, consistent with all previous statements and testimony, did admit to drinking before going to the bar, and smoking marijuana outside the bar immediately before and during the shooting, April 14, 2004 Tr. 21, 23, 27, 37, 44; Statement at 1-3;

(i) Judge Smith correctly concluded that no constitutional error arose from Barksdale's testimony regarding his alcohol consumption because even if Gay could establish that the Barksdale actually perjured himself and the Commonwealth knew or should have known about it, he cannot establish a "reasonable likelihood that the false testimony could have affected the judgment of the jury," United States v. Augurs, 427 U.S. 97, 103 (1976);

(j) Since Gay elected for a bench trial and Barksdale admitted to consuming alcohol and marijuana, Judge Keeler, as the finder of fact, was aware of Barksdale's mental and physical condition at the time of the shooting; more information about Barksdale's intoxication level is not likely to have materially alter Judge Keeler's credibility determination about Barksdale's testimony or his final judgment;

(k) Gay also argues that his conviction is founded on perjury because Barksdale's account of the shooting and Commonwealth's medical expert's analysis of the victim's gunshot wounds are contradictory;

(l) Barksdale testified that he heard three or four shots, that he saw Gay fire one shot in the air, one at the ground, and one at the victim, and that the victim was running away from Gay as he fired, April 14, 2004 Tr. p. 32, 47, 54;

(m) The Commonwealth's medical expert, Dimetri Contostavlos, testified that the victim suffered three gunshot wounds: one in the top of his foot, one his right buttock, and

one on the right side of his chest, April 14, 2004 Tr. p. 101-02, 104, 105;

    (n)  The medical expert could not say which of the three bullets struck the victim first, but could say that the bullet to the right side of the victim's chest killed him, and that the gunshot wound to the victim's chest might not have immediately incapacitated the victim, i.e., he could have kept running after he suffered this blow, April 14, 2004 Tr. p. 109, 111-113;

    (o)  Judge Smith correctly concluded that no constitutional error arose from the discrepancies between Barksdale's account of the shooting and the medical examiner's presentation of the physical facts because, without more, inaccuracies in witness testimony do not amount to perjury, United States v. Grico, 277 F.3d 339, 362 n.14 (3d Cir. 2002) (witness's testimony must be willfully and materially false, "rather than as a result of confusion, mistake, or faulty memory" (citing United States v. Dunnigan, 507 U.S. 87, 94 (1993));

    (p)  Here Barksdale himself suggested that the passage of time may have affected his account of the events, April 14, 2004 Tr. 55-57, thereby undercutting any claim of perjury;

    (q)  Moreover, these inaccuracies do not begin to suggest the Commonwealth knew or should have known Barksdale's testimony was perjury, which Gay would have to establish to obtain habeas relief;

    (r)  Also, the discrepancies between Barksdale's

account of the shooting and the medical examiner presentation are not necessarily irreconcilable, e.g., as Judge Smith points out, the victim could have turned while running away from the shooter when the fatal bullet struck the victim; this is but one of many possible scenarios that would reconcile the discrepancies between Barksdale's account and the medical examiner's analysis;

(s)   Other than bald assertions and unsupported speculations about the knowing use of perjury, Gay offers nothing to provide a basis for us to overturn Judge Keeler's credibility determinations about Barksdale's account of the shooting;

(t)   We now turn to the Gay's second basis for relief: the use of Barksdale's testimony violates the Pennsylvania's incontrovertible facts doctrine;

(u)   This basis for relief rests on the same assumptions, assertions, and facts as Gay's argument that Barksdale perjured himself because his account was inconsistent with that of the medical examiner except that it relies on a wholly state law doctrine;

(v)   Judge Smith correctly concluded that such a claim is not cognizable before this court because "a federal court may not issue the writ on the basis of a perceived error of state law," Pulley v. Harris, 465 U.S. 37, 41 (1984);

(w)   We now turn to Gay's argument that Barksdale was incompetent to testify because he drank alcohol and smoked marijuana the night of the shooting;

(x)   Judge Smith correctly concluded that no

constitutional error arose here since intoxication of a witness goes to witness credibility and not competency to testify, Commonwealth v. Drew, 459 A.2d 318, 321 (Pa. 1983);

(y)  To overturn Judge Keeler's decision to permit Barksdale to testify, we would have to find Judge Keeler's decision "so conspicuously prejudicial as to deprive a defendant of a fair trial," United States ex rel. Watson v. Yeager, 458 F.2d 23, 24 (3d Cir. 1972);

(z)  Gay has offered no support for his contention that Judge Keeler's decision to permit Barksdale to testify was a violation of due process at all, let alone a conspicuously prejudicial one;

(aa)  We now consider Gay's contention that the evidence against him was insufficient for him to be convicted beyond a reasonable doubt;

(bb) Judge Smith properly identified the relevant question when reviewing the legal sufficiency of a conviction as "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 309, 319 (1979) (emphasis in original);

(cc) After reviewing Judge Smith's comprehensive report and the transcripts of the trial and preliminary hearing, we find that sufficient evidence existed for a rational trier of fact to find Gay guilty beyond a reasonable doubt of the crimes for which

he was convicted;

(dd) We now turn to Gay's claims of ineffective assistance of trial counsel;

(ee) Gay points to three possible instances of ineffective assistance by trial counsel: (1) failure to file pretrial motion to prevent Barksdale from testifying as incompetent, (2) failing to call a toxicology expert to opine on what effect the drugs and alcohol had on Barksdale's perceptions on the night of the shooting, and (3) failing to alert the court to the prosecutions knowing use of perjury;

(ff) For us to grant habeas relief for ineffective assistance of counsel, petitioner must establish both prongs of the Strickland test: first, trial counsel's performance must be below an "objective standard of reasonableness," and second, the petitioner must suffer prejudice, i.e., but for trial counsel's errors, the result at trial would have been different, Strickland v. Washington, 466 U.S. 668, 688, 694 (1984);

(gg) Judge Smith correctly concluded that failure to file pretrial motions about Barksdale's competence cannot form a basis for relief because, as we have discussed above, supra ¶¶ (x)-(z), intoxication goes to credibility and not to competence; thus, the motion would have been meritless, and we cannot find trial counsel ineffective for failing to raise a meritless claim, Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000);

(hh) Judge Smith correctly concluded that Gay cannot establish ineffectiveness of counsel for failure to call a

toxicology expert because Gay is unable to point to anything in the record that suggests he was prejudiced by such failure, see supra ¶ (j);

(ii) Moreover, we do not know whether the hypothetical toxicologist's testimony would have bolstered or weakened Gay's defense, and thus he cannot establish that trial counsel's failure to call a toxicologist was a but-for cause of Gay's conviction;

(jj) Gay's claim that trial counsel was ineffective because he failed to point out Barksdale's allegedly perjured testimony about his alcohol consumption cannot succeed because Gay cannot establish any prejudice arising from such failure, see supra ¶¶ (j)-(n);

(kk) We now turn Gay's claim of ineffective assistance of PCRA counsel;

(ll) Judge Smith correctly concluded that Gay's claim was not cognizable in federal habeas because 28 U.S.C. § 2254(i) plainly prohibits relief for incompetence of counsel in post-conviction proceedings;

(mm) Gay's next claim of error on the part of the PCRA court stems from that court's adoption of PCRA counsel's no merit letter rather than conducting an independent review of Gay's case;

(nn) Judge Smith correctly concluded Gay has no claim for relief on this basis because the alleged error by the state court is of its decision on a question of purely state law, and

we cannot grant habeas relief for such error, <u>Pulley</u>, 465 U.S. at 41;

It is hereby ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED;

2. The petition for writ of habeas corpus is DENIED;

3. Derrick Gay having made no substantial showing of a denial of a constitutional right, we DECLINE to issue a certificate of appealability; and

4. The Clerk shall CLOSE this civil action statistically.

                              BY THE COURT:

                              <u>/s/ Stewart Dalzell, J.</u>